**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **C.M., a minor by her** ) | |
| **Parent and Next Friend, E.C.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: _____** |
| ) | |
| **FAIRFAX COUNTY SCHOOL BOARD,** ) | |
| **8115 Gatehouse Road** ) | **JURY TRIAL DEMANDED** |
| **Falls Church, VA 22042** ) | **(Counts Two through Six)** |
| ) | |
| **and** ) | |
| ) | |
| **CITY OF FAIRFAX SCHOOL BOARD** ) | |
| **10455 Armstrong Street** ) | |
| **Fairfax, VA 22030** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

COMES NOW the Plaintiff, C.M., a minor by her Parent and Next Friend E.C., by and through undersigned counsel, and for her civil action seeking review of the Virginia Department of Education's Special Education Due Process Hearing Officer Decision dated February 21, 2023, and for her Complaint states as follows:

### Preliminary Statement

1.      Plaintiff brings this civil action due to Defendants' denial of educational rights protected by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (the "IDEA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section 504"); Title II of the Americans with Disabilities Act (the "ADA"); and the corresponding federal and state implementing regulations for such laws.

2.      In Count One, Plaintiff challenges the February 21, 2023, decision by a Special Education Due Process Hearing Officer (the "Hearing Officer") denying the relief sought in her Request for Due Process Hearing. Plaintiff therein alleged Defendants' failure to provide her daughter a free appropriate public education ("FAPE") and requested an award of compensatory education services and reimbursement for private provider expenses incurred. Specifically, the student's parents (the "Parents") alleged that Defendants' failure to provide the student with in-person special education services and supports during the 2020-21 school year and the denial of special education and related services during the 2020-21 school year was not reasonably calculated to enable the student to receive meaningful educational benefits in light of her unique and individualized needs and given her circumstances. Plaintiff alleges that the Hearing Officer erred in her factual findings and conclusions of law and erred in determining that defendant Fairfax County School Board offer the student FAPE. The Hearing Officer also erred because she did not address all matters at issue in the Due Process Complaint and because she ruled on issues that parents had not raised in their Request for Due Process Hearing.

3.      Plaintiff also seeks relief pursuant to Section 504 and Title II of the ADA due to Defendants' denials of FAPE and discrimination on the basis of disability.

### Parties

4.      C.M. (the "Student") is a ten-year-old student who resides in the City of Fairfax, Virginia.  Student resides within the boundaries of City of Fairfax Schools.

5.      E.C. (the "Parent") is Student's mother and resides in the City of Fairfax, Virginia.

6.      Defendant Fairfax County School Board ("FCSB") is the governing body of FCPS, a public school system located in Fairfax County, Virginia.  Upon information and belief, FCSB

2

receives several sources of federal funds. FCSB is a Local Educational Agency ("LEA") as that term is defined by state and federal law regarding the provision of educational services to individuals residing within its boundaries.

7.  Defendant City of Fairfax School Board is the governing body of City of Fairfax Public Schools, a public school system located in Fairfax City, Virginia. City of Fairfax Schools is an LEA as that term is defined by Virginia's regulations implementing the IDEA because it is "a local school division governed by a local school board." 8 VAC 20-81-10. City of Fairfax Public Schools provides education and related services for children with disabilities by way of a School Services Agreement between the City of Fairfax School Board and the Fairfax County School Board, among other parties, dated August 10, 1978.

## Jurisdiction and Venue

8.  This Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. §§ 1331, 1343.

9.  Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 because: (i) Defendants operate a place of business within this judicial district and has sufficient contacts with this judicial district to subject it to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this claim have occurred within this judicial district.

10. Parent timely filed two requests for a special education due process hearing and has exhausted all administrative remedies pursuant to the IDEA, as required by 20 U.S.C. § 1415(l).

## Statement of Facts

A.  Student's disability-related educational needs.

11.     Student is a child with a disability as such term is defined under the IDEA. Pursuant to the IDEA and Virginia law, Student is eligible for special education services in the category of Other Health Impairment ("OHI). She has been diagnosed with a rare genetic condition, as well as additional diagnoses of Intellectual Disability (Intellectual Development Disorder) Moderate, Attention Deficit Hyperactive Disorder (Combined Presentation), and autism spectrum disorder.

12.     Student has been enrolled in Fairfax County Public Schools ("FCPS") at all times pertinent to this case pursuant to the School Services Agreement. Student currently attends, pursuant to her Individualized Education Program ("IEP"), a private day school that specializes in the needs of children with disabilities.

13.     Student was first found eligible for special education in 2015 and began receiving special education and related services from FCPS, when she was in pre-school.

14.     Student began attending Providence Elementary School ("Providence") during the 2018-19 school year. She continued at Providence through the 2021-22 school year.  Providence is owned by the City of Fairfax School Board, is part of City of Fairfax Public Schools, and is operated by FCPS.

15.     Student's IEP in effect during the 2018-19 school year identified "needs in the areas of social skills, speech intelligibility, behavior improvements, fine motor, academic readiness, life skills, and adapted physical education" and provided special education support throughout the school day. She was educated in a general education setting for 5.5 hours per week; the remainder of her school week was spent in a special education setting.

16.     The IEP team convened for Student's annual IEP meeting on April 8, 2019 (the "April 2019 IEP"). The IEP team agreed that Student continued to require 100% special education support, although the team increased the time in a general education setting to 6.5 hours of per week.

17.     The April 2019 IEP identified Student's then-current challenges accessing an education, to include:

> •Difficulty following teacher instructions in the classroom, although she was able to work diligently for up to 15-20 minutes before becoming unfocused.
> •When denied a positive behavior reward, "[Student] will become very upset by screaming, yelling, stomping, and crying. . . ."
> •"In moments of non-compliance, [Student] will refuse to transition to another area of school (i.e. classroom to the cafeteria, classroom to Library, classroom to dismissal, or during arrival while getting off the bus). When staff give [Student] prompts to stand/move, she will show resistance by pushing staff members, running away, or refusing to move."
> •"School staff shared that they have noticed some improvements in [Student's] behavior when she works outside her main classroom, especially when 1:1 with an adult or with 1 other student."

18.     Student's disability-related educational needs required that she receive "specialized instruction and a low student to teacher ratio to meet her needs in the areas of: Mathematics, Reading, Behavior Improvements, Speech Production, Hand Use and Adapted Physical Education."

B.     The COVID-19 pandemic's impact on Student's ability to access an education.

19.     Prior to March 2020, all of Student's special education services and supports were delivered in an in-person, highly structured school setting. Student was constantly supervised by, and received direct support from, teachers, therapists, and aides with specific training and certifications to assist young students with disabilities. During the school day, FCPS provided Student with access to special adapted equipment, like adapted scissors, in addition to non-

adapted materials tailored to her needs, like visual schedules. Student's in-person learning

environment was well suited to help her make meaningful progress on her IEP goals during the

2018-19 school year and during the first six months of the 2019-20 school year.

20.     Student's IEP Progress Reports based on pre-pandemic data documented

meaningful progress on all of her annual goals. Student earned scores of "4" (Sufficient Progress)

and "5" (Mastery) on most of her IEP goals and objectives in the April 3, 2020, IEP Progress

Report, which was based on data collected prior to March 16, 2020. Similarly, Student's April 30,

2020, IEP (the "April 2020 IEP") reported that "[b]etween August 2019 and March 2020, Student

demonstrated significant socioemotional progress."

21.     FCPS convened Student's annual IEP meeting, by teleconference, on April 30,

2020 (the "April 2020 IEP"). The April 2020 IEP documents Student's continued need for

significant direct teacher support to receive FAPE. The IEP team, once again, agreed that Student

require special education support throughout the school day to receive FAPE. The April 2020 IEP

explained that:

> [Student] requires specialized instruction and a low student:teacher ratio in a
> highly structured setting to meet in her needs in the areas of mathematics, reading,
> writing, behavior improvements, classroom tool use, communication, and adapted
> physical education.

22.     The April 2020 IEP documented the significant progress Student made prior to the

Covid-19 pandemic. Consistent with that progress, the April 2020 IEP proposed to increase

Student's time in a general education setting to 7.5 hours per week when the 2020-21 school year

began. The special education and related services otherwise remained unchanged.

23.     FCPS was offering education to its students solely by virtual means, regardless of

a student's individualized disability-related educational needs, when the IEP team met on April

6

30, 2020. Due to Student's individual needs as a child with a disability, she was unable to

meaningfully access an education by virtual needs without being provided in-person special

education support.  FCPS did not offer Student the required in-person special education services

and supports.

24.     The IEP team did not propose in the April 2020 IEP to provide Student with

special education and related services by virtual means during the 2020-21 school year.  Parents

consented to implementation of the April 2020 IEP.

25.     On July 21, 2020, FCPS announced that the 2020-21 school year would begin with

all students – including students with disabilities – attending virtually, beginning September 8,

2020. Notwithstanding such announcement, the April 2020 IEP remained unchanged and in full

effect.

26.     FCPS convened an IEP meeting on September 3, 2020, and proposed changing

Student's special education services from in-person instruction to virtual instruction. FCPS

proposed to provide Student with 13.0 hours of virtual special education services per week, which

was less than half of the 27.75 hours of weekly special education services provided by the April

2020 IEP. FCPS staff attending the IEP meeting refused to consider any provision that would

offer Student in person services, whether in a virtual setting or otherwise. Parents denied consent

to the school division's proposed change to Student's special education services because it denied

FAPE.  Thus, the April 2020 IEP remained in full effect.

27.     FCPS began the 2020-21 school year on September 8, 2020. Notwithstanding that

Student's April 2020 IEP remained in full effect, and notwithstanding that Student's educational

needs at that time as a child with a disability remained unchanged from April 30, 2020, FCPS

only offered Student home-based, virtual instruction (both synchronous and asynchronous). FCPS refused to provide Student with in-person services and supports – either located at a school building, in Student's home, or at any other location. FCPS maintained its refusal despite its knowledge that Student required direct special education support throughout the school day to access FAPE.

28.     Parents asked FCPS, without success, to evaluate Student's "ability to access and successfully participate in a virtual curriculum."

29.     Student's parents endeavored to have FCPS provide Student with in-person instruction, and to otherwise comply with the April 2020 IEP, once the 2020-21 school year began. FCPS maintained its refusal to provide Student with the special education services and supports required by her unique, individualized educational needs and circumstances as a child with disability. Parents also contacted City of Fairfax School Board representatives in an effort to obtain appropriate special education services for Student.

30.     In early September 2020, Parents provided FCPS with letters from two of Student's health care providers. It was both providers' professional recommendation that Student required in-person instruction in order to access an education due to her disability. FCPS disregarded these professional opinions and continued to offer Student only virtual instruction and without any in-person special education support.

31.     To the extent FCPS provided, or attempted to provide, Student with virtual special education services, such proffered services were functionally not available to Student. Student's needs require one-on-one in-person special education assistance to receive FAPE.

8

32.     On October 5, 2020, Parents filed a complaint with the Virginia Department of

Education ("VDOE") challenging FCPS' refusal to provide Student in-person instruction. On

October 23, 2020, while the state complaint remained pending, FCPS convened an IEP meeting to

discuss in-person instruction for Student.[1] FCPS proposed to offer Student what it called "face-to-

face" special education services four days per week beginning October 27, 2021. FCPS would

continue to provide online instruction to Student for the fifth school day each week. FCPS

provided Student with the face-to-face services through December 11, 2020, at which point FCPS

returned to exclusively virtual instruction with no in-person support.

---

1 VDOE issued its Letter of Findings on March 15, 2021, and concluded that the September 2020 IEP "**was not reasonably calculated** to reasonably calculated to allow Student to make progress appropriate in light of Student's circumstances—that is, within a virtual learning model." (emphasis original). VDOE directed FCPS to develop a plan to provide Student with compensatory education services for the period of September 8, 2020, through October 2, 2020, that, at a minimum, addressed the "failure to provide assistive technology or other accommodations necessary for Student to receive FAPE during the identified period."

VDOE's Letter of Findings expressly declined to address whether Student required in-person instruction between September 8, 2020, and October 2, 2020: "To be clear, **we make no finding regarding whether in-person instruction was required** for Student to receive FAPE during the cited period." (emphasis original). VDOE's Letter of Findings aptly noted:

> Legal experts have advised that *answers to the questions that have arisen in applying the IDEA in the COVID-19 context are legally unprecedented. As a result, we primarily look to hearing officers for the initial answers to these questions.... It will eventually be the higher courts that establish the legal precedents on issues such as the extent to which FAPE applies during remote instruction. See* P. Zirkel, *Legal Decisions for Special Education COVID-19 Issues: Emerging Answers*, *InCASE*, Vol. 62, No. 4 (March 2021).

The parents' Request for Due Process Hearing giving rise to this Civil Action raised the FAPE issues that VDOE excluded from its Letter of Findings (among other denials of FAPE Parents raise relating to the 2020-21 school year).

Student's IEP team convened on April 5, 2021, to discuss the compensatory education services needed to comply with VDOE's directive. The April 5, 2021, IEP proposed "51.5 hours of compensatory services, 51.5 hours of compensatory services, to include 3 hours of speech and language services. These services will be provided in a face to face manner." Parents consented to the number of hours of services FCPS proposed to address VDOE's finding that FCPS was in noncompliance. Notably, and in violation of the IDEA, FCPS did not identify "[t]he projected dates (month, day, and year) for the beginning of the services and modifications and the anticipated frequency, location, and duration of those services and modifications." 8 VAC 20-81-110(G)(7); *see also* 20 U.S.C. § 1414(d)(1)(A)(i)(VII) and 34 CFR 300.320(a)(7). FCPS still had not delivered all of these required compensatory education services when the 20**21-22** school year concluded more than one year later. To date, FCPS still has not delivered the remaining compensatory education services required to satisfy VDOE's finding of non-compliance.

33.    FPCS later resumed in-person instruction, for four days per week, on February 16, 2021, which continued for the remainder of the school year. FCPS only offered virtual instruction (with little or no in-person support) for the fifth school day of each week.

34.    The numerous transitions between in-person and virtual instruction during the 2020-21 school year, was contrary to Student's documented educational needs and her documented difficulty with transitions. This resulted in Student becoming unable to access an appropriate education and demonstrating regression on the IEP progress she had made prior to March 2020. Student's IEPs and Progress Reports from the 2020-21 school year document her difficulties accessing an education, her need for substantial support, her lack of progress, and her regression.

35.    Parents endeavored to mitigate Student's harm during the 2020-21 school year by hiring private providers for necessary and appropriate occupational therapy, speech language therapy, behavioral services, and tutoring services and supports. Parents informed school staff about those private services.  Despite those efforts, Student's education records document the adverse impact of the denial of FAPE on her educational performance and her ability to make meaningful progress on her IEPs. Student's regression was such that the IEP team agreed at its May 21, 2021, meeting that Student's "regression that occurred during the school closure over the past school year" supported having her repeat Second Grade.

36.    The impact of the denial of FAPE in spring 2020 and during 2020-21 school year also manifested itself during the 2021-22 school year. Student continued to exhibit regression during that school year. which increasingly and adversely impacted her ability to access an education – despite multiple IEP meetings during the 2021-22 school year to review Student's

IEP and behavior plan and to try to stop the regression. More than simply not making meaningful progress since September 8, 2020, Student had regressed from the progress she had made as of that date.

37.     Student's educational performance by April 2022 was markedly different from what FCPS had documented just two years earlier. Unlike April 2020, Student no longer enjoyed school and no longer demonstrated a willingness to participate in all school activities. Unlike April 2020, Student no longer could remain in a designated area during small and large group instruction. Unlike April 2020, Student would not respond to positive reinforcement. Unlike April 2020, Student was not typically using coping strategies and calming down with just one or two prompts. Unlike April 2020, Student was unable to access an appropriate education at Providence.

38.     Student's behavioral challenges regressed to such a degree that the entire IEP team agreed on June 15, 2022, that Providence was unable to provide her with FAPE, that Student required a more restrictive setting in order to receive FAPE, and that Student's behavioral needs had arisen to such a level that private day placement was her least restrictive environment. The IEP team did not believe that public separate placement (an intermediate "step" along the continuum of placements between special education in a regular school and private day school) could provide FAPE. Parents consented to the private day placement proposed in the June 15, 2022, IEP (the "June 2022 IEP").

39.     In addition, FCPS proposed in the June 2022 IEP to provide Student with 155.0 hours of compensatory education services "in the areas of reading and mathematics" due to its denial of FAPE during the 2020-21 school year and the resulting adverse impact on Student's

ability to access an education.[2] Parents declined FCPS' proposed compensatory services because it was inadequate to remedy Student's denied educational services, her lost learning, and her lost academic achievement and functional performance. For example, the proposal did not provide evidence-based behavioral therapy (such as Applied Behavior Analysis) or address the denied services regarding Chinese language instruction. Nor were the proposed services sufficient to facilitate Student's ability to make meaningful progress to advance to the skill level she reasonably would have been expected to achieve but-for the denial of FAPE during the 2020-21 school year.

40.    In August 2022, Student began attending a private day school licensed by VDOE to provide special education instruction and services. She continues to attend private day school as her current IEP placement.

C.    The OCR Letter of Findings.

41.    On January 12, 2021, the U.S. Department of Education's Office for Civil Rights ("OCR") notified FCPS that "it is initiating a directed investigation of the Fairfax County Public Schools (District) due to disturbing reports involving the District's provision of educational services to children with disabilities during the COVID-19 pandemic."[3] OCR stated that it "is concerned that the District has failed to provide a 'free appropriate public education' (FAPE) to each qualified student with a disability as required by federal law and denied students with disabilities equal access to education."

---

2 FCPS also proposed to reimburse Parents up to $48.00 per hour for an additional thirteen hours of compensatory education services from a private provider. That proposal (at a substantially below fair-market rate) was intended to satisfy FCPS' unfilled promise made more than one year earlier to comply with VDOE's Letter of Findings.
3 Upon information and belief, the referenced "disturbing reports" included a news story about Student's challenge with accessing an education by virtual means.

42.     On May 4, 2021, OCR asked FCPS to provide it with documents regarding "what the Division has done to address the effects of any pandemic-related disruptions in services required to meet the individual educational needs of students with disabilities."

43.     On November 30, 2022, OCR issued a letter regarding its findings of fact in the investigation and identified extensive non-compliance with federal law by FCPS in its delivery of FAPE to qualified students beginning in the spring of 2020 and continuing through the 2021-22 school year. Summarizing its findings, the agency stated:

> Specifically, OCR found that during remote learning, the Division failed or was unable to provide a FAPE to thousands of qualified students with disabilities and failed to conduct evaluations of students with disabilities prior to making significant changes to their placements and to ensure that placement decisions were made by a group of persons knowledgeable about the students and the meaning of the evaluation data, in violation of the Section 504 regulation at 34 C.F.R. §§ 104.33 and 104.35; (2) directed staff to apply an incorrect standard for FAPE that was not compliant with the Section 504 regulation, and categorically reduced and placed limits on services and special education instruction provided to students with disabilities based on considerations other than the students' individual educational needs, in violation of 34 C.F.R. § 104.33; and (3) failed to develop and implement a plan adequate to remedy the instances in which students with disabilities were not provided a FAPE as required by Section 504 during remote learning. In addition, the evidence obtained to date raised compliance concerns that staffing shortages and other administrative obstacles resulted in non-provision of some FAPE services for students with disabilities; and that the Division did not accurately or sufficiently track services provided to students with disabilities to enable the Department to ascertain the Division's compliance with 34 C.F.R. § 104.33, as required by 34 C.F.R. § 104.61 (incorporating 34 C.F.R. § 100.6(b)).

44.     Among OCR's many factual findings pertinent to the present case:

> •FCPS instructed staff that "for some students, IEP goals and objectives should be reduced, both qualitatively and quantitatively, to account for the virtual setting. . . . OCR did not obtain evidence suggesting that the Division anticipated making similar changes to the objectives that students in the regular education curriculum were expected to master at the time, despite also learning remotely.

> •FCPS directed school staff in August 2020 that IEPs (which were being reviewed prior to the start of the school year) were limited to "a 'maximum number of hours' that could 'be documented on the IEP services page'—'no more than' 21

hours per week for elementary students, and 'no more than' 24 hours for middle and high school students."

•Evidence that FCPS offered students an IEP that offered "significantly reduced [] level of services" when instruction would be delivered virtually compared to when instruction would be delivered in person. This is precisely what FCPS proposed in Student's September 2020 and October 2020 IEPs, among others.

•Evidence that FCPS "was not fully tracking when students were really receiving services online."

•An FCPS "study published in November 2020 [] demonstrates the significant impact on Division students with disabilities while learning remotely."

•Although FCPS reported "that, by March 2021, most students had been given the option to return to in-person instruction. However, documentation showed that the return to in-person was not full-time."

*Fairfax County (VA) Public Schools*, 82 IDELR 71, 122 LRP 45535 (OCR Nov. 30, 2022).

45.    Among OCR's detailed analysis and numerous legal conclusions pertinent to the

present case:

> • "OCR found that, beginning with the spring 2020 shift to remote learning through the 2020-2021 school year, the Division categorically reduced and/or limited the services and special education that students were entitled to receive through their IEPs or Section 504 plans while learning remotely, in violation of 34 C.F.R. §§ 104.33 and 104.35."

> • "OCR finds that throughout that period, the Division failed to appropriately develop and provide students with disabilities instruction and related services during remote learning that were designed to meet their individual educational needs, in violation of §§ 104.33 and 104.35."

> • "During the 2020-2021 school year, the Division continued to direct its IEP teams to categorically reduce and place limits on the services, special education instruction, and educational curriculum that students with IEPs could receive while learning remotely."

> • ". . . case managers were instructed to draft those virtual IEPs based on the goals and services already outlined in the IEP, but to revise them 'to focus on goals or objectives' that 'the student can achieve and can be realistically supported based on the number of days/hours' in the shortened 4-day week. In practice, however,

14

that meant further reducing the instruction and services that some students on IEPs could receive and what they would be expected to learn during remote learning—beyond the 20% decrease in the school week for live instruction and services."

• "And according to other evidence OCR has obtained, virtual IEPs could also significantly cut some of the services a student was expected to receive remotely, possibly beyond the categorical limitations.

• "[T]he Division's documents also indicated a virtual IEP could water down what students were expected to master during remote learning . . . . The documents reflected that a virtual IEP could also lower how much a student was expected to master of that less ambitious material . . . . To date, OCR has obtained no evidence suggesting that the Division had similarly downgraded its academic expectations for students without disabilities during the 2020-2021 school year, even though they, too, were learning remotely. To the contrary, in late August 2020, the Division had said publicly that it expected its students to master essentially the same material as in any other year, despite learning online."

• "The evidence OCR reviewed also raised further concerns that the Division may not have been accurately or sufficiently tracking services provided to students with disabilities during remote learning, as required for the Department to ascertain its compliance with 34 C.F.R. § 104.33."

• "[A]t a December 2020 webinar, several teachers expressed concern that the Division had instructed them to count students with disabilities present for virtual instruction even when those students were only logging in, but not turning on their cameras or microphones or otherwise engaging in instruction. Based on this evidence, OCR has concerns that during remote learning the Division may not have been adequately tracking the provision of its services, as required by 34 C.F.R. § 104.61 (incorporating 34 C.F.R. § 100.6(b)), to confirm that its students with disabilities were receiving an education and services consistent with 34 C.F.R. 104.33."

*Id.*

D.      The First Request for Due Process Hearing.

46.      Parent filed a Request for Due Process Hearing with FCPS, City of Fairfax School Board, and VDOE pursuant to the IDEA on July 21, 2022, alleging the denial of FAPE during the 2020-21 school year.[4] Sarah S. Freeman, Esquire, was appointed to serve as the Special Education Hearing Officer.

47.      FCPS filed its Objection to Sufficiency and Answer on August 1, 2022. City of Fairfax Schools did not file an objection or other response to the Request for Due Process Hearing. Parents opposed FCPS' sufficiency objection because their filing satisfied, and significantly exceeded, the IDEA's requirements.  On August 5, 2022, the Hearing Officer dismissed the Request for Due Process Hearing and allowed parents leave to amend, although the Hearing Officer improperly precluded parents from seeking certain remedies as part of an amended pleading.

48.      Parents filed an Amended Request for Due Process Hearing on August 19, 2022. The amended filing satisfied, and significantly exceeded, the IDEA's requirements. On August 29, 2022, FCPS again objected to sufficiency. City of Fairfax Public Schools did not file an objection or other response to the Amended Request for Due Process Hearing. The following day, the Hearing Officer dismissed the Amended Request for Due Process Hearing without prejudice. Dismissal on sufficiency grounds is not subject to challenge in a civil action. Parents' only recourse was to file a new Request for Due Process Hearing.

---

4 The parents expressly excluded from the complaint's scope the outstanding compensatory education services owed per VDOE's Letter of Findings. The complaint's scope did not seek a remedy for school conduct that denied FAPE prior to the 2020-21 school year. Nor did the parents assert claims for school conduct that denied FAPE during the 2021-22 school year. The parents did, however, allege facts that took place before and after the 2020-21 school year.

E.      The Second Request for Due Process Hearing.

49.     Parent filed a second Request for Due Process Hearing with FCPS, City of Fairfax Schools,  and VDOE on September 7, 2022, alleging denial of FAPE during the 2020-21 school year. Ms. Freeman was again appointed as the Special Education Hearing Officer.

50.     On September 18, 2022, FCPS objected to the sufficiency of the parents' new filing. City of Fairfax Schools did not file an objection or other response to the new filing. Parents opposed FCPS' objection because their filing satisfied, and significantly exceeded, the IDEA's requirements.

51.     On September 19, 2022, the parents asked the Hearing Officer to issue a subpoena *duces tecum* directed to FCPS.[5] FCPS asserted objections to the requested subpoena on September 22, 2022.

52.     On September 22, 2022, the parents asked the Hearing Officer to issue a subpoena *duces tecum* directed to the City of Fairfax School Board.[6] No written objections to the requested subpoena were filed.

53.     On September 23, 2022, the Hearing Officer again dismissed the case on sufficiency grounds. The Hearing Officer's Order allowed parents leave to amend, although she improperly precluded parents from seeking certain remedies as part of an amended pleading.

54.     Parents filed an Amended Request for Due Process Hearing on October 10, 2022. The amended filing satisfied, and significantly exceeded, the IDEA's requirements. On October 20, 2022, FCPS filed yet another objection to sufficiency. Once again, City of Fairfax Schools did not

---

5 Parents asked the Hearing Officer to issue a substantially similar subpoena *duces tecum* in the previously filed case.
6 Parents asked the Hearing Officer to issue a substantially similar subpoena *duces tecum* in the previously filed case.

file an objection or other response to the Amended Request for Due Process Hearing. On October 26, 2022, the Hearing Officer denied the Objection to Sufficiency.

55.     By mid-October, the Hearing Officer had not issued the Parents' requested subpoenas *duces tecum* and had not ruled on FCPS' objections to requested subpoena directed to it. On October 18, 2022, counsel for the parties conferred on October 18, 2022, in an effort to resolve any objections (including objections to subpoenas *duces tecum* that FCPS had requested). The meeting resolved several, although not all, of the objections.

56.     On October 23, 2022, Parents submitted to the Hearing Officer amended subpoenas *duces tecum* directed to FCPS and the City of Fairfax School Board and requested that she issue them.

57.     On October 27, 2022, the Hearing Officer issued a Second Pre-Hearing Report and Scheduling Order (the "Pre-Hearing Report"), and scheduled the due process hearing for November 29, 2022, through December 2, 2022. Parents wrote to the Hearing Officer on November 7, 2022, because the Pre-Hearing Report included numerous factual errors, legal errors,[7] and ambiguous language. The Hearing Officer issued an Amended Second Pre-Hearing Report and Scheduling Order on November 9, 2022 (the hearing dates remained unchanged). As of that date, the Hearing Officer still had not issued the requested subpoenas *duces tecum*.

58.     On November 10, 2022, Parents asked the Hearing Officer to issue the long-pending requested subpoenas "because hearing dates are rapidly approaching and the parents' requested

---

7 For example, the Hearing Officer restricted the parents' legal right to receive a copy of the hearing transcript. The Hearing Officer also included a requirement granting her the ability to dismiss the parents' complaint if the school division did not comply with certain aspects of her order.

subpoenas have not been issued." Parents expressed that the "delays prejudice the parents' ability to prepare for a fair hearing."

59.    Parents again wrote to the Hearing Officer on November 15, 2022, regarding the Hearing Officer's failure to issue the requested subpoenas and stated:

> The due process hearing in this case is scheduled to begin on November 29 (or, possibly November 28 given your email this afternoon). The parties are required to provide their prehearing disclosures no later than Monday, November 21, 2022. To date, you have not issued the subpoenas that parents requested in mid-September. The ongoing delay in issuing the requested subpoenas unfairly prejudices the parents' ability to have a fair hearing.

> We are reviewing this current status with our clients and may have no option but to ask that you postpone the due process hearing until a later date.  In the interim, we reiterate the parents' requests that you issue the subpoenas directed to Fairfax County Public Schools and to the City of Fairfax School Board.

60.    On November 16, 2022, Parents asked the Hearing Officer to postpone the due process hearing due to her failure to issue the subpoenas that they requested in September.  The email stated:

> The parents filed the present Request for Due Process Hearing (Case No. 23-023) on September 7, 2022. On September 19, 2022, the parents asked that you issue a subpoena *duces tecum* directed to Fairfax County Public Schools. The requested subpoena *duces tecum* was largely similar to what had been requested in the prior case. On September 22, 2022, the parents asked that you issue a subpoena *duces tecum* directed to City of Fairfax Public Schools. To date, you have not issued either of the requested subpoenas.

> The subpoenas *duces tecum* seek production of documents and other materials that are essential to the parents' ability to properly prepare for the upcoming due process hearing.  The due process hearing in this case is scheduled to begin on November 29. The deadline for the parties to serve their prehearing disclosures is Monday, November 21, 2022 (legally, the deadline is Friday, November 18, 2022, although the parties consented to moving the date to November 21).

> The delay in issuance of the requested subpoenas unreasonably and unjustly prejudices the parents' ability to have a fair hearing.  Even if you issued the subpoenas today, we still would need to await FCPS' and CFSB's document production and would need a reasonable opportunity to review what likely will be a voluminous document (by comparison, FCPS recently produced nearly 7,000 pages of documents in another pending

19

due process case). Accordingly, the parents request that you: a) immediately issue the requested subpoenas *duces tecum*, b) postpone the hearing dates in this case, c) reschedule the hearing to mid- or late-December, and d) extend the deadline for you to issue your decision.  The requested continuance and extension of deadlines is in the best interests of the child consistent with your authority under 8 VAC 20-81-210(P)(9).

Later that day, the Hearing Officer granted the parents' request to postpone the due process hearing. The hearing was rescheduled for January 17-20, 2023. She still did not issue the requested subpoenas *duces tecum*.

61.     It was not until November 30, 2022, that the Hearing Officer finally issued subpoenas *duces tecum* directed to FCPS and the City of Fairfax School Board. The issued subpoenas improperly excluded several categories the Parents had requested.

62.     The due process hearing was held January 17-20, 2023.  The parties called nine witnesses to testify. Of those witnesses, the only witness who was qualified as an expert witness in the field of medicine was Monica Gill, M.D., Student's physician. Defendants did not offer any medical testimony regarding student's disability-related needs.

63.     The Hearing Officer issued her written Decision on February 21, 2023. A copy is attached as Exhibit A. The Decision found that the school division provided the student with FAPE during the 2020-21 school year and that the student made "appropriate progress in light of her circumstances which was not de minimis," Accordingly, the Hearing Officer denied all remedies the parents requested.  Notably, the Hearing Officer's Decision was contrary to FCPS' own position in the June 15, 2022, IEP –Student should receive "155 hours of recovery services in the areas of reading and mathematics" (in addition to the 51.5 hours required due to the VDOE Letter of Findings) due to her inability to access virtual instruction during the 2020-21 school year.

64.     The Decision that FCPS provided Student a FAPE during the 2020-21 school year is contrary to the law and preponderance of the evidence introduced at the due process hearing.

## Count One:  Administrative Appeal Pursuant to IDEA

65.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 as if they were set forth in full herein.

66.     This civil action challenges the Hearing Officer's Decision pursuant to the IDEA, 20 U.S.C. § 1415(i). Parents also bring this pursuant to Virginia Code § 22.1-213, *et seq.*

67.     Defendants violated federal law by denying FAPE to Student.

68.     On July 21, 2022, Parents requested a special education due process hearing regarding the denial of FAPE to student during the 2020-21 school year. The Hearing Officer improperly dismissed the Complaint and the Amended Complaint as insufficient and improperly dismissed remedies requested by Parents.

69.     On September 7, 2022, Parents requested a special education due process hearing regarding the denial of FAPE to student during the 2020-21 school year.

70.     The Hearing Officer's September 23, 2022, Order improperly dismissed the Complaint as insufficient and improperly dismissed remedies sought by Parents.

71.     The Hearing Officer's February 2, 2021, Decision denying Parents' claims and denying all remedies requested is factually and legally improper and requires reversal.

72.     The Hearing Officer's findings were not "regularly made" in accordance with applicable law and are not entitled to due weight.

73.     Among the reasons why the Hearing Officer's findings and conclusions are improper, not regularly made, and/or require reversal are:

a.  The Hearing Officer's finding that Student "made appropriate progress during the 2020-2021 school year" was contrary to the preponderance of the evidence.

b.  The Hearing Officer, contrary to the preponderance of the evidence and contrary to law, found that Student had not "suffered regression as a result of the FCPS failure to provide an appropriate learning environment inside the school building. And it follows that the Hearing Officer did not arrive at the conclusion that C.M. regressed."

c.  The Hearing Officer's finding and/or conclusion that "The September 3, 2020 IEP, the Hearing Officer believes that the IEP fully provided C.M. a FAPE" is contrary to the preponderance of the evidence and legally incorrect.

d.  The Hearing Officer improperly found that "Student fully participated in synchronous, general education virtual activities during the 2020-21 school year."

e.  The Hearing Officer's findings were improper because they were contrary to the preponderance of the evidence that Student's unique and individual needs as a child with a disability made learning by virtual means, without in-person special education services and supports, a denial of FAPE.

f.  The Hearing Officer gave undue deference to the FCPS staff who testified as expert witnesses. Notably, the Hearing Officer's conclusion that "FCPS educators in are most familiar with C.M.'s abilities in the special education setting all" ignored the importance of parental participation in the IEP process. Deference to parental input was paramount in this case because Student's virtual services were delivered to Student in her home, without in-person special education services and supports, and with parental observation at all times.  Parents, not FCPS educators, were the most familiar with Student's needs and abilities during home-based virtual instruction. The undue deference to the school staff is also evident from the statement that the parent "is not a special education expert." although true, gave undue deference to school staff.

g.  The Hearing Officer gave undue deference to the FCPS staff over Dr. Gill's expert testimony. Dr. Gill testified that it was her expert medical opinion that Student could not meaningfully benefit from a virtual education and required in-person support. Defendants offered no medical expert testimony to rebut Dr. Gill's opinions. The Hearing Officer improperly minimized Dr. Gill's expertise on the basis that she had no educational background in special education.

h.  The Hearing Officer misconstrued VDOE's narrowly tailored Letter of Findings, and the 51.5 hours of compensatory services provided to Student due to FCPS' denial of FAPE relating to technology between September 8, 2021, and October 10, 2022 (the "VDOE Hours"). The Hearing Officer gave improper weight to that discussion, which

addressed a different issue than what was at issue in the due process hearing. VDOE's Letter of Findings expressly excluded from its determination the issues that Parents raised in the due process proceeding.

i. The Hearing Officer incorrectly found that FCPS awarded Student compensatory education services beyond the "VDOE Hours" in the April 5, 2021, IEP. Contrary to the Hearing Officer's findings, the purported "compensatory" services were the actual special education and related services FCPS proposed to provide as part of Student's IEP. The finding is contrary to the preponderance of the evidence that the IEP team deferred discussion of compensatory education services due to Student's inability to access FAPE via virtual instruction. The IEP team did not discuss that issue until the June 15, 2022, IEP meeting.

j. The Hearing Officer disregarded that the school division routinely did not fully implement Student's last-signed IEP during the 2020-21 school year. Among the conduct ignored, the school division unilaterally reduced Student's special education and related services during the 2020-21 school year.

k. The Hearing Officer ignored the preponderance of evidence that the school division refused to consider Student's individual and unique educational needs when it imposed virtual delivery of special education and related services, with no in-person special education services or supports, during the 2020-21 school year. As the U.S. Supreme Court held in *Endrew F.*, the IEP process requires a "fact-intensive exercise [that] will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians."  Moreover, "A focus on the particular child is at the core of the IDEA. The instruction offered must be "*specially* designed" to meet a child's "*unique* needs" through an "[*i*]*ndividualized* education program." (emphasis original). The Hearing Officer erred because the preponderance of the evidence demonstrated that the school did not do this.

l. The Hearing Officer improperly characterized private ABA Student received during 2020-21 school year as "medically necessarily," implying that the services did not address serve Student's educational needs.

m. The Hearing Officer improperly found, contrary to the preponderance of the evidence, that "on October 23, 2020, the IEP team proposed realistic goals for C.M. that were tied to her IEP in Mathematics, Reading, Communication and Articulation Strategies. . . . The IEP team enumerated these services which were to be provided to C.M. through telephone contact, emails pre-recorded videos and/or video conferencing sessions. FCPS was to provide these educational services in-person to C.M." IEP goals that would be delivered by a means that did not include in-person special education services and support were not realistic.

23

n.  The Hearing Officer's incorrectly found that "On December 14, 2020, Governor Northam again ordered the school district to close due to an increase in deaths, and other factors, related to the COVID-19 pandemic" is error. FCPS unilaterally chose to stop providing in-person services on that date and through mid-February 2021.

o.  The Hearing Officer's findings are contrary to the preponderance of the evidence regarding Student's behavior during the 2020-21 school year and regarding her inability to access an education and/or make meaningful progress.

p.  The Hearing Officer's findings are contrary to the preponderance of the evidence regarding Student's behavior during the 2021-22 school year and her inability to access an education and/or make meaningful progress.

q.  The Hearing Officer's findings are contrary to the preponderance of the evidence that Student, as of when Parents requested a due process hearing, had not made meaningful progress from where she was situated when the 2020-21 school year began.

r.  The Hearing Officer's conclusion that a school division's delivery of virtual services does not deny FAPE pursuant to U.S. Department of Education guidance is in error. The Hearing Officer ignored the fundamental requirement to consider whether the school's proposed delivery of virtual services (in this case, without in-person special education services or supports) is reasonably calculated to allow the student to make meaningful progress in light of her unique and individualized needs and circumstances. The preponderance of the evidence established that Student could not, and was not, receiving FAPE by virtual services delivered without in-person special education services and supports.

s.  The Hearing Officer's improperly relied on the fact that Student had "experienced behavioral issues from the time she entered kindergarten" as justification for her finding that the school division did not deny FAPE. The Hearing Officer's finding that that Student's regression and renewed behaviors arising during the 2020-21 school year were a natural part of Student's disability, and not due to the denial of FAPE during the 2020-21 school year, was improper.

t.  The Hearing Officer improperly attributed Student's need to repeat second grade to parental request, which was a justification for her finding that the school division did not deny FAPE. It was immaterial that the parent first proposed retaining Student in Second Grade. The preponderance of evidence demonstrated that the entire IEP team agreed that Student's regression during the 2020-21 necessitated that she repeat Second Grade.

u. The Hearing Officer's conclusion that Parents sought private service providers during the 2020-21 without notice to FCPS was contrary to the preponderance of the evidence. Parents regularly communicated with the school division about Student's private services, which Parents asserted were required due to the school's delivery of virtual services (including virtual services on Mondays even when the student returned to in-person instruction for the remainder of the school week).

v. Hearing Officer disregarded and/or did not give sufficient weight to OCR's Letter of Findings that FCPS was in non-compliance during the 2020-21 school year regarding the provision of FAPE to children with disabilities. OCR's findings of fact and legal conclusions involved the same types of allegations Parents raised at the due process hearing.

w. The Hearing Officer's conclusion that "private day school placement fulfills any minute deficiencies in C.M.'s April 30, 2020, IEP which would require one to make tedious, unproductive hours-to-hours mathematical calculations" is contrary to the preponderance of the evidence and legally incorrect.

x. The Hearing Officer's rejection of Parents' calculation of compensatory damages was not regularly made, contrary to the evidence, and legally incorrectly. The Hearing Officer made no effort to assess the extent to which Student should receive compensatory education services, a process she deemed tedious.

y. The Hearing Officer, contrary to the preponderance of the evidence and legally incorrect, concluded that "Parents did not present any expert witnesses who causally connected [Student's] behavior to the fact that she experienced regression during the pandemic caused by the School District's failure to provide her in-person instruction during the pandemic." School staff testified that Student experienced regression as a result of the instructional changes during the Covid-19 pandemic as was entitled to compensatory education services, which they characterized as "recovery services."[8]

---

[8] OCR addressed FCPS' effort to use the term "recovery services" instead of "compensatory education services." OCR explained that FCPS instructed staff in fall 2020 "that IEP teams should steer parents away from discussing compensatory services, and instead redirect them to recovery services instead." FCPS preferred using the term "recovery services," which it explained differed from "compensatory services" because "[t]he reason for providing compensatory services involves a denial of FAPE, and/or failure to provide the student with the services and supports outlined in the IEP." This distinction was emphasized "in an October webinar for its elementary special education lead teachers."

OCR declared FCPS' "approach inadequate" for several reasons. "First, by refusing even to discuss compensatory services, the Division appears to be applying the same erroneous standard that it used to deny students FAPE in the first place. As already explained, FAPE did not change during the pandemic, nor did districts' obligation to adequately remedy shortfalls in the services that students with disabilities require for FAPE. . . .

"Accordingly, for students with disabilities who did not receive those services while learning remotely, the Division was responsible for convening a group of persons knowledgeable about the student to make an individualized determination whether, and to what extent, compensatory services are required. The Division's efforts

z. The Hearing Officer's finding and/or conclusion that "[t]he evidence and testimony showed that the many IEPs proposed to the Parents for C.M., from April 2020 to June 15, 2021, through the present were 'reasonably calculated to enable [Student] to make progress appropriate in light of [her] circumstances'" was contrary to the preponderance of the evidence and legally incorrect.

aa. The Hearing Officer applied an incorrect legal standard in determining whether the Student received FAPE and simply looked whether student made "appropriate progress in light of her circumstances which was not de minimis." The law requires more than *de minimis* and more than "'merely more than *de minimis'* progress." The correct standard is that "a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." This requires a "fact-intensive exercise [that] will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians." As the U.S. Supreme Court explained in *Endrew F.*, "A focus on the particular child is at the core of the IDEA. The instruction offered must be "*specially* designed" to meet a child's "*unique* needs" through an "[*i*]*ndividualized* education program." (emphasis original). The Hearing Officer erred because the preponderance of the evidence demonstrated that the school did not do this.

bb. The Hearing Officer's Decision did not appropriately address the claims alleged as to the City of Fairfax School Board.

74.     The Hearing Officer's Decision is also improper because it issued rulings regarding issues that Parents had not even raised in the Amended Request for Due Process Hearing and, thus, were not part of the case. For example:

a. The Hearing Officer made a finding and/or conclusion that "[t]he Parents argument that [Student] is owed compensatory services for the periods when schools were closed due

---

to deter parents and staff from so much as discussing compensatory services—even for students that the Division knows did not receive the services they were due—is flatly at odds with the Division's obligations under Section 504.

   "Second, the Division's specific approach to remedial services—what it refers to as "recovery services"—falls short of what is required to remedy denials of FAPE. . . . Instead, as a general matter of policy, the Division has refused even to entertain compensatory education for services it did not or could not provide due to the COVID-19 pandemic—apparently based on its erroneous belief that it was responsible for providing only "FAPE in light of the circumstances."

   "Even apart from that erroneous standard, the Division appears to have limited students' ability to receive remedial services in yet other ways. For example, in several webinars early in 2021, Division administrators acknowledged that parents and advocates had voiced concerns that IEP teams were still not raising the possibility of recovery services with parents. Moreover, both the Supplemental Document for Recovery Services and the Guidance Document suggest that students who did not fully participate in remote learning during the spring of 2020 would not be considered for compensatory or remedial services at all. . . .
*Fairfax County (VA) Public Schools*, 82 IDELR 71 (OCR Nov. 30, 2022).

to the pandemic is without merit." This refers to the period of April 2020 to June 2020. Parents did not allege in the Amended Request for Due Process Hearing that Student was denied FAPE during those dates.[9]  Nor did they request compensatory education services regarding that period.

b. The Hearing Officer made a finding and/or conclusion that "the 51.5 hours the VDOE allotted for compensatory educational services is reasonable" was not an issue in the case. The Amended Request for Due Process Hearing expressly did not challenge the 51.5 hours provided due to VDOE's finding of non-compliance.

c. The Hearing Officer made a finding and/or conclusion that FCPS provided FAPE during the 2021-22 school year. Parents' due process submission did not allege a claim that the school division denied FAPE during the 2021-22 school year. To the extent Parents' Amended Request for Due Process alleged facts that occurred during the 2021-22 school year (and to the extent they offered evidence relating to the 2021-22 school year), it related to the ongoing effects of the denial of FAPE during the 2020-21 school year and Student's need for compensatory education services.

d. The Hearing Officer made a finding and/or conclusion that the June 2022 IEP's provision for private day placement was proper. That was not an issue in this case. Parents agreed that the student required private by placement as of June 15, 2022, and consented to that IEP's proposed placement.

75.     The foregoing evidences the Hearing Officer's inability to understand the facts and circumstances at issue in the administrative proceeding, demonstrate that the Hearing Officer's findings were not regularly made, and demonstrates the Hearing Officer's failure to issue a cogent and reasoned decision providing findings of fact and conclusions of law that are based "solely upon the preponderance of the evidence presented at the hearing and  applicable state and federal law and regulations." 8 VAC 20-81-210(O)(13).

76.     The Hearing Officer's Decision was otherwise contrary to the law and evidence.

77.     Parent has exhausted her administrative remedies.

---

9 Although it was not alleged in the due process proceeding, Parents believe Student was denied FAPE from April 2020 to June 2020.

78.     As a result of the Defendants' failure to provide Student with FAPE during the 2020-21 school year, Student is entitled to compensatory education services.

79.     As a result of the Defendants' failure to provide Student with FAPE during the 2020-21 school year, Plaintiff is entitled to reimbursement, in the amount of at least $18,767.24, for out-of-pocket expenses incurred. Such reimbursement includes, but is not limited to, private expenses for tutoring, behavioral, occupational therapy, and speech services.

80.     Plaintiff incurred attorneys' fees and expenses in connection with the due process proceedings and will incur attorneys' and expenses in this proceeding. Plaintiff seeks an award of reasonable attorneys' fees and expenses, in an amount to be determined, if she is a prevailing party in this proceeding.

### Count Two:  Violation of Section 504 of the Rehabilitation Act – Failure to Provide a Free Appropriate Public Education

81.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 as if they were set forth in full herein.

82.     Section 504 states: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ."  29 U.S.C. § 794.

83.     Section 504 requires that a school board provide a FAPE to all qualified individuals with disabilities within its jurisdiction regardless of the nature or severity of the individual's disability.  34 C.F.R § 104.33(a).

84.     Section 504's standard for FAPE is different from the IDEA's definition of FAPE. Section 504 defines FAPE as:

28

> . . . the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons <u>as adequately as</u> the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

34 C.F.R § 104.33(b)(1) (emphasis added).

85.     Student is an otherwise qualified individual with a disability.

86.     Defendants' have actual knowledge of Student's documented diagnoses that qualify her as an individual with a disability. These conditions substantially limit Student's major life activities, including, but not limited to,  caring for oneself, performing manual tasks, walking, speaking, learning, reading, concentrating, thinking, and communicating.

87.     Student was found eligible for special education services under the IDEA in the disability category of OHI due to her diagnoses. She continues to remain eligible for special education.

88.     Defendants intentionally discriminated against Student when it denied Student the opportunity to benefit from its services, programs, and activities by failing to provide her with a FAPE under Section 504.

89.     Defendants must provide Student with regular or special education and related aids and services that meet her individual educational needs as adequately as the needs of nondisabled students so that she can succeed in school and reach her full potential.

90.     FCPS' delivery of virtual special education services during April to June 2020 and during the 2020-21 school year denied her FAPE.

91.     FCPS' unilateral reduction of her special education services during April to June 2020 and during the 2020-21 school year denied her FAPE.

92.     Upon information and belief, FCPS' failure to properly track the special education services purportedly delivered to her during April to June 2020 and during the 2020-21 school year denied her FAPE.

93.     While implementing an IEP developed pursuant to the IDEA that provides FAPE is one means of meeting the standard for an appropriate education, 34 C.F.R § 104.33(b)(2), Defendants did not do that.

94.     Defendants, despite repeated requests by Parents, disregarded Student's educational needs as an individual with a disability during April to June 2020 and during the 2020-21 school year.

95.     Defendants engaged in bad faith and/or gross misjudgment in its dealings with Student and her family.

96.     Defendants had actual knowledge of Student's educational needs, which were identified in detail in her IEPs and other education records maintained by Fairfax County School Board.

97.     At all times pertinent to this case, Defendants had actual knowledge of Student's inability to access FAPE by virtual learning without in-person special education support.

98.     At all times pertinent to this case, Defendants had actual knowledge of Student's lack of meaningful progress on her IEP goals and of her regression on progress she had made prior to the Covid-19 pandemic.

99.     Defendants acted in bad faith and/or gross misjudgment by disregarding the professional opinions of Student's private health care providers concerning Student's educational needs.

100.     Defendants acted in bad faith and/or gross misjudgment by failing and refusing to consider Student's specific needs as an individual with a disability.

101.     Defendants acted with bad faith and/or gross misjudgment in refusing to take reasonable and appropriate action to address her educational needs as an individual with a disability.

102.     As a result of Defendants' bad faith and/or gross misjudgment, intentional discrimination can be inferred. Such discrimination was "solely by reason of" Student's disability.

103.     As a result of Defendants' actions, Plaintiff incurred out-of-pocket expenses for private services for Student, from September 6, 2020, to present in an amount of at least $18,767.24, for services including tutoring, behavioral, occupational therapy, and speech services. Plaintiff also incurred attorneys' fees and costs in an effort to obtain appropriate educational services and support for Student.

104.     With regard to Defendants' conduct during the 2020-21 school year, Plaintiff also seeks equitable relief in the form of compensatory education services.

105.     Section 504 states that a prevailing plaintiff is entitled to request an award of attorneys' fees and expenses. 42 U.S.C. § 1988, 42 U.S.C. § 12205.

106.     Plaintiff exhausted administrative remedies under the IDEA.

### Count Three:  Violation of Section 504 – Denying Student an Opportunity to Participate in or Benefit Equally from Instruction

107.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 and Paragraphs 81-106 as if they were set forth in full herein.

108.    Section 504 regulations prohibit the following discriminatory actions taken by a

School Board:

> (1) A recipient, in providing any aid, benefit, or service, may not . . . :
> (i) Deny a qualified handicapped person the opportunity to participate in or
> benefit from the aid, benefit, or service;
> (ii) Afford a qualified handicapped person an opportunity to participate in
> or benefit from the aid, benefit, or service that is <u>not equal</u> to that afforded
> others;

34 C.F.R. § 104.4(b).

109.    Defendants intentionally discriminated against Student by denying her an

opportunity to derive equal benefit from instruction during the 2020-21 school year by failing to

provide her with the aid of specially designed instruction to meet her unique needs.

110.    Defendants intentionally discriminated against Student by denying her an

opportunity to derive equal benefit from instruction during the 2020-21 school year by providing

her different educational instruction and opportunities that were made available to students

without disabilities.

111.    As a direct and proximate cause of Defendants' discrimination under Section 504,

Student's did not make meaningful progress during April to June 2020 and during the 2020-21

school year and demonstrated regression of numerous skills. This loss of educational opportunity

has affected her cognitive and behavioral abilities and will affect her future success in school. As a

result of Defendants' actions and inactions, Student's IEP determined on June 15, 2022, that her

least restrictive environment under the IDEA needed to be placed from her base school to private

day placement.

112.     Defendants' actions and inactions have prevented Student from reaching her full potential which is the fundamental goal of public schools in Virginia for all students, whether disabled or nondisabled.

113.     As a result of Defendants' actions, Plaintiff incurred out-of-pocket expenses for private services for Student, from April 1, 2020, to present in an amount of at least $18,767.24, for services including tutoring, behavioral, occupational therapy, and speech services. Plaintiff also incurred attorneys' fees and costs in an effort to obtain appropriate educational services and support for Student.

114.     With regard to Defendants' conduct during the 2020-21 school year, Plaintiff also seeks equitable relief in the form of compensatory education services.

115.     Section 504 states that a prevailing plaintiff is entitled to request an award of attorneys' fees and expenses. 42 U.S.C. § 1988, 42 U.S.C. § 12205.

116.     Plaintiff exhausted administrative remedies under the IDEA.

### Count Four:  Violation of Section 504 – Denying Student Equally Effective Instruction

117.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 and Paragraphs 81-116 as if they were set forth in full herein.

118.     Section 504 regulations prohibit the following discriminatory actions taken by a School Board:

(1) A recipient, in providing any aid, benefit, or service, may not . . . :
    (iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others; . . .

34 C.F.R. § 104.4(b) (emphasis added).

33

119.    Defendants intentionally discriminated against Student by providing her instruction that was not as effective for a child with a disability.

120.    As identified in OCR's November 2022 letter, FCPS instructed staff to reduce IEP goals and objectives "both qualitatively and quantitatively, to account for the virtual setting. . . . OCR did not obtain evidence suggesting that the Division anticipated making similar changes to the objectives that students in the regular education curriculum were expected to master at the time, despite also learning remotely."

121.    As identified in OCR's November 2022 letter, FCPS internal guidance "documents also indicated a virtual IEP could water down what students were expected to master during remote learning . . . . The documents reflected that a virtual IEP could also lower how much a student was expected to master of that less ambitious material . . . . To date, OCR has obtained no evidence suggesting that the Division had similarly downgraded its academic expectations for students without disabilities during April to June 2020 and during the 2020-2021 school year, even though they, too, were learning remotely."

122.    Defendants conduct was made in bad faith and/or gross misjudgment.

123.    As a direct and proximate cause of Defendants' violation of Section 504, Student's did not make meaningful progress during April to June 2020 and during the 2020-21 school year and demonstrated regression of numerous skills. This loss of educational opportunity has affected her cognitive and behavioral abilities and will affect her future success in school. As a result of Defendants' actions and inactions, Student's IEP determined on June 15, 2022, that her least restrictive environment under the IDEA needed to be placed from her base school to private day placement.

124.    Defendants' actions and inactions have prevented Student from reaching her full potential which is the fundamental goal of public schools in Virginia for all students, whether disabled or nondisabled.

125.    As a result of Defendants' actions, Plaintiff incurred out-of-pocket expenses for private services for Student, from April 1, 2020, to present in an amount of at least $18,767.24, for services including tutoring, behavioral, occupational therapy, and speech services. Plaintiff also incurred attorneys' fees and costs in an effort to obtain appropriate educational services and support for Student.

126.    With regard to Defendants' conduct during the 2020-21 school year, Plaintiff also seeks equitable relief in the form of compensatory education services.

127.    Section 504 states that a prevailing plaintiff is entitled to request an award of attorneys' fees and expenses. 42 U.S.C. § 1988, 42 U.S.C. § 12205.

128.    Plaintiff exhausted administrative remedies under the IDEA.

### Count Five:  Violation of Section 504 –Limiting Student's Enjoyment of a Right, Privilege, Advantage, or Opportunity

129.    Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 and Paragraphs 81-128 as if they were set forth in full herein.

130.    Section 504 regulations prohibit the following discriminatory actions taken by a School Board:

(1) A recipient, in providing any aid, benefit, or service, may not . . . :
        (vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

34 C.F.R. § 104.4(b) (emphasis added).

35

131.    Defendants intentionally discriminated against Student by limiting her enjoyment of any right, privilege, advantage, or opportunity for instruction enjoyed by others.

132.    Defendants conduct was made in bad faith and/or gross misjudgment.

133.    As a direct and proximate cause of Defendants' violation of Section 504, Student's did not make meaningful progress during April to June 2020 and during the 2020-21 school year and demonstrated regression of numerous skills. This loss of educational opportunity has affected her cognitive and behavioral abilities and will affect her future success in school. As a result of Defendants' actions and inactions, Student's IEP determined on June 15, 2022, that her least restrictive environment under the IDEA needed to be placed from her base school to private day placement.

134.    Defendants' actions and inactions have prevented Student from reaching her full potential which is the fundamental goal of public schools in Virginia for all students, whether disabled or nondisabled.

135.    As a result of Defendants' actions, Plaintiff incurred out-of-pocket expenses for private services for Student, from April 1, 2020, to present in an amount of at least $18,767.24, for services including tutoring, behavioral, occupational therapy, and speech services. Plaintiff also incurred attorneys' fees and costs in an effort to obtain appropriate educational services and support for Student.

136.    With regard to Defendants' conduct during the 2020-21 school year, Plaintiff also seeks equitable relief in the form of compensatory education services.

137.    Section 504 states that a prevailing plaintiff is entitled to request an award of attorneys' fees and expenses. 42 U.S.C. § 1988, 42 U.S.C. § 12205.

36

138.     Plaintiff exhausted administrative remedies under the IDEA.

### Count Six:  Violation of Title II of the ADA

139.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 64 and 81 through 138 as if they were set forth in full herein.

140.     Title II of the ADA requires state and local governments to give people with disabilities an equal opportunity to benefit from all of the programs, services, and activities offered by the public entity. 28 CFR § 35.160(b)(1).

141.     Title II of the ADA, in prohibiting discrimination on the basis of disability, states:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132; *see also* 28 C.F.R. Part 35.

142.     Title II of the ADA directs that:

A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

28 CFR § 35.160(b)(1).

143.     As discussed *supra*, Student is qualified to participate in school activities.

144.     Student is an "individual with a disability," as defined in 42 U.S.C. § 12102(1), because her disabilities substantially limit her major life activities of reading, writing, spelling, calculating, thinking, and learning.

145.     Student is an "qualified individual with a disability," as defined in 42 U.S.C. § 12131(2), because she is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services,

37

meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

146.    City of Fairfax School Board owns Providence.

147.    Both defendants are a "public entity" as defined in 42 U.S.C. § 12131(1).

148.    Providence is a facility as that term is defined under the ADA. 28 C.F.R. § 35.104., Its operation constitutes a program and services for ADA purposes.

149.    Separate and apart from the Section 504 claims, Defendants failed and refused to reasonably accommodate and/or modify the services needed by Student due to her disability.

150.    Student required in-person special education services and support to access her education from April 2020 to June 2020. Defendants denied Student in-person special education services support from April 2020 to June 2020.

151.    Student required in-person special education services and support to access her education during the 2020-21 school year. Defendants denied Student in-person special education services support during the 2020-21 school year.

152.    As a direct and proximate cause of Defendants' conduct, Student was, by reason of her disability, excluded from participation in or be denied the benefits of the services, programs, or activities of Defendants.

153.    As a result of Defendants' conduct, Student did not make meaningful progress during April to June 2020 and during the 2020-21 school year and demonstrated regression of numerous skills. This loss of educational opportunity has affected her cognitive and behavioral abilities and will affect her future success in school. As a result of Defendants' actions and

inactions, Student's IEP determined on June 15, 2022, that her least restrictive environment under the IDEA needed to be placed from her base school to private day placement.

154.    As a result of Defendants' discrimination, Plaintiff incurred out-of-pocket expenses for private services for Student, from April 1, 2020, to present in an amount of at least $18,767.24, for services including tutoring, behavioral, occupational therapy, and speech services. Plaintiff also incurred attorneys' fees and costs in an effort to obtain appropriate educational services and support for Student.

155.    Regarding Defendants' conduct during the 2020-21 school year, Plaintiff also seeks equitable relief in the form of compensatory education services.

156.    Plaintiff requests an award of her attorneys' fees and costs incurred. 42 U.S.C § 12133; 29 U.S.C. § 794a.

157.    Plaintiff exhausted administrative remedies under the IDEA.

WHEREFORE, C.M., a minor by her Parent and Next Friend E.C., asks that the Court:

1.    Conduct a review of the Hearing Officer's due process decision pursuant to the IDEA and Virginia Code §22.l-214 and reverse the Hearing Officer's Decision;

2.    Enter judgment in favor of Plaintiff and against Defendant on Counts One through Six;

3.    With regard to all Counts, award Plaintiff equitable relief and compensatory education services for Student's benefit;

4.    With regard to all Counts, award Plaintiff an amount to be proven at trial, currently believed to be not less than $18,767.24, as reimbursement for out-of-pocket expenses incurred;

5.    With regard to Counts Two through Six, Award Plaintiff compensatory damages in an amount to be proven at trial;

6.    With regard to all Counts, award Plaintiff, as prevailing party, her attorneys' fees and expenses, court costs, and other compensable expenses; and

7.      Award Plaintiff all other relief this Court deems fair and equitable.

Respectfully submitted,

*/s/ Harold G. Belkowitz*
Harold G. Belkowitz
Virginia State Bar No. 37274
hbelkowitz@belkowitzlaw.com
Belkowitz Law, PLLC
10427 North Street, Suite 200
Fairfax, Virginia 22030
(703) 246-9270 Office
(703) 246-9273 Direct
Counsel for C.M., a minor, by the Parent and Next
Friend, E.C.

## **Request for Jury Trial**

Plaintiff requests a jury trial on Counts Two through Six.

Respectfully submitted,

*/s/ Harold G. Belkowitz*
Harold G. Belkowitz
Virginia State Bar No. 37274
hbelkowitz@belkowitzlaw.com
Belkowitz Law, PLLC
10427 North Street, Suite 200
Fairfax, Virginia 22030
(703) 246-9270 Office
(703) 246-9273 Direct
Counsel for C.M., a minor, by the Parent and Next
Friend, E.C.